## R. G. MAURY ET AL. V. A. & R. McDONALD.

Decided April 3, 1909.

**1.—Garnishment—Contract—Debtor.**

Where the defendant had a contract to purchase certain lands and entered into a contract with the garnishee by which the latter acquired a half interest in the lands and, in making the first payment as stipulated in the original contract, the garnishee made his part of such payment by handing to defendant one-half thereof which the latter immediately paid to the vendor, and the garnishee entered into an obligation to pay said vendor the other payment, the indebtedness thus created was not to defendant but to the vendor, and was not subject to garnishment at the suit of a creditor of the defendant.

**2.—Same—Effects Subject to Garnishment.**

Where the garnishee owned a half interest in a contract to purchase lands, and secured an option to purchase the interest of defendant who owned the other half, under a contract to either exercise said option or to lend defendant the money to make his share of the payments, and he elected not to exercise his option and produced a draft payable to himself and kept it in his possession until a certain date when he endorsed it and delivered it to defendant in compliance with his contract to lend the money, this did not constitute effects in the hands of the garnishee belonging to defendant and subject to garnishment.

**3.—Same—Compensation of Garnishee—Costs—Attorney's Fee—Statute.**

The compensation allowed the garnishee under the statute is not to be limited to the value of the naked service of preparing his answer where the same is controverted, but also includes the value of legal services in resisting the writ, where it appears that the plaintiff has no cause of action against the garnishee; and a reasonable attorney's fee may be taxed as costs against the plaintiff. Rev. Stats. art. 253.

**4.—Same—Case Followed—Cases Distinguished.**

Where suit was against a nonresident for debt and the plaintiff only sought a judgment in rem against the property in the hands of the garnishee, and the latter confined himself solely to resistance of plaintiff's claim that he was indebted to the defendant or had effects in his hands, and sought only to prevent a judgment which he insisted and the court found would not protect him under the contracts shown, and judgment was in his favor, he was entitled to a reasonable attorney's fee to be taxed as costs. Cases followed: Johnson v. Blanks, 68 Texas, 496; Willis v. Heath, 75 Texas, 124. Cases distinguished: Kelly v. Gibbs, 84 Texas, 146; Moursund v. Priess, 84 Texas, 558. If the decision in Carlisle v. Sommer, 61 Texas, 125, announces a different rule it is inconsistent with the later cases.

**5.—Findings of Fact.**

Where the findings of the court indicated fully and clearly its conclusion that the written instrument stated the contract between the parties upon which the issues were to be determined, there was no error in refusing to make findings upon matter constituting mere evidence introduced by the appellant to show the nature of the contract.

Appeal from the District Court of Harris County. Tried below before Hon. Charles E. Ashe.

*Baker, Botts, Parker & Garwood,* for appellants.—The court erred in rendering judgment for the garnishees, for that the contracts offered in evidence by the garnishees show that said garnishees had obligated themselves to pay to Stallforth & Co. the sums of money therein specified in consideration of the acquiring by said garnishees of an interest in the tract of land which said Stallforth & Co. then had a contract to purchase, and said contracts show that the garnishees were indebted to the defendant Stallforth & Co. for sums of money largely in excess of the amount of plaintiffs' judgment, that there was no privity of contract between garnishees and Pereyra, but the obligation was to pay to Stallforth & Co. the amount specified in said contract.

Where the amount is ascertained, and the time is definite and fixed, amounts not yet due are subject to garnishment, as well as those already due. Marble Falls Ferry Co. v. Spitler, 7 Texas Civ. App., 82; Phoenix Ins. Co. v. Willis, 70 Texas, 12.

The garnishee's liability to the defendant is the measure of his liability to the plaintiff in garnishment, and in this case, McDonald having entered into a contract with Stallforth & Co. to pay $45,000 for a half interest in the land, if he failed to do so, Stallforth & Co. could have enforced payment of this sum. This being true, the balance due on the half interest purchased by McDonald was a debt which was subject to garnishment by plaintiff. Healey v. Butler, 66 Wis., 9, 27 N. W., 822; Goodman v. Meriden Britannia Co., 50 Conn., 139; Megee v. Beirne, 39 Pa. St., 51; Davis v. Tingley, 116 Pa. St., 113; Sabin v. Cooper, 81 Mass. (15 Gray), 532; Todd v. Hall, 10 Conn., 543; Davis v. Marston, 5 Mass., 199.

The court erred in allowing the garnishees any sum as attorney's fees, for that the garnishees did not answer disclosing any of the facts in this matter, but filed answers of such a nature, and so conducted the defense, as to become active litigants in this cause, and are not entitled to an allowance for attorney's fees. Carlisle v. Sommer, 61 Texas, 124; Kelly v. Gibbs, 84 Texas, 146; Mousund v. Priess, 84 Texas, 558; Sayles' Civ. Stats., art. 226.

*L. B. Moody,* for appellees.

REESE, Associate Justice.—This is an appeal from a judgment of the District Court in favor of appellees as garnishees, in a garnishment proceeding instituted against them by appellants in connection with a suit against F. Stallforth & Bros., Successors & Company, a partnership composed of Mrs. Stallforth, a feme sole, and G. Hemminghoffen, doing business under the aforesaid name. Defendants were residents of the Republic of Mexico, and in the petition against them were alleged to be indebted to appellants in the sum of $11,600 upon a contract in writing for commissions for the sale of certain timbered lands in Mexico. Defendants Stallforth & Co. were cited by personal service upon them in Mexico under the statute, and judgment by default was rendered against them for the amount sued for, the judgment, however, not to operate as a personal judgment against defendants, but only as a judgment *in rem* against whatever indebted-

ness on the part of the garnishees might be attached by the garnishment proceedings.

At the same time a writ of garnishment was sued out against appellees which was executed upon each of them on June 6, 1907. In the application for the writ it was alleged that the persons named are indebted to the defendants, or have in their hands effects belonging to them. Each of the garnishees answered under oath fully denying that he was indebted to, or had effects of, defendants in his hands, and that he knew of any persons indebted, etc., and prayed to be discharged with his costs and attorney's fees.

These answers were controverted under oath by appellants, who alleged as follows:

"And controverting the facts set out in said answers, these plaintiffs show that they have good reason to believe and do believe that the answers of the garnishees are incorrect, in that on the first day of June, 1907, the said Arch McDonald and R. McDonald entered into a contract with defendant F. Stallforth & Bro., Successors & Company, by the terms of which they bound themselves to pay to the said defendants a sum exceeding in amount $90,000 as the purchase price for what is known as the Pareyra tract of 142,000 acres of land situated in the northern part of the State of Durango, Republic of Mexico, about fifteen miles from the mining camp of Guanacevi. That on the first of June, 1907, the date of said contract, that there was due to one Abel Pereyra the sum of $30,000 U. S. currency, on account of said land, which the garnishees obligated themselves to pay; that the said garnishees did not have with them at that time sufficient money to make said payment, and at said time the defendants, F. Stallforth & Bro., Successors & Co., advanced to the garnishees herein the sum of $15,000, which under the terms of said contract was to be repaid to the defendants by the garnishees on the 15th day of September, 1907. That of the total amount to be paid on said contract there had been paid at the time of the service of the writ of garnishment herein only the sum of $15,000, being one-half of the first payment, which the said garnishees obligated themselves to pay to the said F. Stallforth & Bro., Successors & Co., leaving now due on said contract the sum of $15,000, advanced by the said Stallforth to the said garnishees, in addition to the balance due on the purchase price agreed upon between the parties. Plaintiffs show that the garnishees are now and have been since the writ herein was served upon them indebted to the defendant, or were indebted to said defendant at the time of the service of the writ of garnishment herein, a sum exceeding $75,000. And they have effects of said defendants in their possession and had such when said writ was served on them."

The following issues were made up by the court:

"1st. Whether or not at the time of the service of the writ of garnishment upon the garnishees, or any time thereafter up to the date of filing the answers, the garnishees R. McDonald or Arch McDonald were indebted to the defendant F. Stallforth & Bro., Successors & Co.

"2d. Whether or not the said R. McDonald and Arch McDonald had in their hands or possession at any time between the date of the service of the writ of garnishment herein and the date of the filing

of the answers herein, any effects of the defendant F. Stallforth & Bro., Successors & Co."

Upon trial without a jury judgment was rendered discharging the garnishees with their costs, including an attorney's fee of $750, and from the judgment this appeal is prosecuted.

The trial court upon request of appellants prepared and filed as a part of the record conclusions of facts as follows:

"1. I find that on June 1, 1907, R. McDonald entered into a contract with F. Stallforth & Bro., Successors & Company, in the Republic of Mexico, by the terms of which the said McDonald acquired a one-half interest in a contract or purchase then existing between Stallforth and one Pareyra, covering a large tract of land in Mexico.

"2. I find that at the time of the execution of the contract the said McDonald paid to Stallforth fifteen thousand dollars ($15,000) which Stallforth at once paid over to said Pareyra, together with fifteen thousand dollars ($15,000) more, making thirty thousand dollars ($30,000), and covering the first payment due Pareyra under his contract with Stallforth.

"3. I further find that said McDonald obligated himself by said contract to pay to Pareyra on November 1, 1907, and May 1, 1908, the remaining amounts on the total price, and that Stallforth agreed to pay McDonald interest at six (6) percent per annum, payable annually, upon one-half of the payments so made by McDonald to Pareyra, said one-half of said payments to be returned by Stallforth to McDonald when the land is sold.

"4. I further find that Stallforth gave McDonald an option upon Stallforth's remaining one-half interest at one (1) dollar per acre, good until September 15, 1907.

"5. I further find that McDonald agreed that if he did not exercise said option he would lend Stallforth fifteen thousand dollars ($15,000) to be secured by lien upon Pareyra land aforesaid, upon which loan Stallforth agreed to pay interest at six (6) percent per annum, payable annually, and to be repaid to McDonald when the land should be sold.

"I further find that said contract between McDonald and Stallforth provided that if either party should fail to comply with any of the obligations therein, that the party so failing should lose whatever amount he had paid under said contract, and forfeit all rights thereunder.

"7. I further find that said McDonald declined to exercise the option to purchase Stallforth's remaining one-half interest in the land.

"8. I further find that on September 13, 1907, said McDonald loaned to Stallforth fifteen thousand dollars ($15,000), taking Stallforth's obligation therefor. By 'Stallforth' wherever used in these findings I mean F. Stallforth & Bro., Successors & Company.

"9. I further find that the said R. McDonald has never at any time been indebted to said Stallforth.

"10. I further find that Arch McDonald has never at any time been indebted to said Stallforth, and has never had any business transactions with Stallforth except as agent for his father, R. McDonald.

"11. I further find from the testimony of the witnesses produced before me, together with my own knowledge of the nature, character and extent of the services rendered in this case by the attorney for the garnishees, that the sum of seven hundred and fifty dollars ($750) is a reasonable and proper allowance to the garnishees for the fees of said attorney, for services rendered and necessary to be rendered herein, including necessary advice furnished the garnishees since the service of the writ of garnishment herein concerning same."

No attack is made upon any of these findings as not supported by the evidence by the assignments of error, and they are adopted by us as such. The findings of fact are based almost entirely upon a certain written contract between appellees and Stallforth & Co., dated June 1, 1907, which is as follows:

"First. Messrs. Stallforth & Bro., Successors & Company, grant and transfer to Mr. Roderick McDonald, who acquires it, the one-half interests, with the obligations which are correlative to them, granted to them in a contract which they have entered into with Mr. Abel Pereyra, according to agreement executed the 24th of November, 1906, and which exists, deposited in the power of the notary public, Attorney Felipe Arellano, Junior, in this city, by which the said gentleman obligated himself to sell a tract of land situated in the district of Santiago Papasquiaro, in the State of Durango.

"Second. Mr. McDonald will deliver today to Messrs. F. Stallforth & Bro., Successors & Co., the sum of fifteen thousand dollars, which they, with an equal sum which corresponds to the half of their rights, deliver today to Mr. Abel Pereyra, as first payment in accordance with the agreement which is mentioned in the preceding paragraph.

"Third. Mr. McDonald obligates himself to pay to Mr. Pereyra, one month before the date stipulated in said agreement, or be it by the first day of November of the current year, and the first of May, 1908, the remaining amounts on the total price; Messrs. F. Stallforth & Bro., Successors & Co., recognizing that they are to pay an interest of six percentum per annum upon the sum which corresponds to the half which they represent, from now on, in the rights granted them by said agreement, which they shall pay annually as it becomes due.

"Fourth. Messrs. F. Stallforth & Bro., Successors & Co., obligate themselves to sell to Mr. Roderick McDonald, who acquires the right to purchase it, the half of which they now represent under the rights derived from the aforesaid agreement, being the price of said sale at the rate of one dollar an acre of land, which he will have to pay them before the fifteenth day of September, next, in this city.

"Fifth. If Mr. McDonald should not make use of the right to purchase, which by the preceding clause he obtains under the terms therein expressed, he obligates himself to lend to Messrs. F. Stallforth & Bro., Successors & Co., the fifteen thousand dollars which under this date they pay to Mr. Abel Pereyra, which sum these gentlemen will return to him with those referred to in the third clause of this agreement, this drawing interest at 6 percentum per annum, which will be paid annually as it becomes due. Which return shall be made when the land is sold.

"Sixth. If Mr. McDonald or Messrs. Stallforth should find a pur-chaser for the land, who shall offer a price of not less than ninety thousand dollars, he shall notify the other, and he, within the space of thirty days, counted from the date of said notice, shall sell his interest at that price, or purchase the other party's interest at the price offered by the purchaser.

"Seventh. If Mr. McDonald or Messrs. F. Stallforth & Bro., Successors & Co., should fail to comply with any of the obligations which this contract imposes, they shall lose, in favor of whomsoever might have received them, the amounts which they might have delivered, and the rights which they have under this agreement.

"Eighth. The place for the fulfillment of this contract is fixed as this city; therefore, the contracting parties submit themselves in an expressed manner, renouncing the jurisdiction of their domicile to the authorities of this district and State. This agreement shall be deposited in the hands of a notary in order that it be taken as a public instrument, at the request of any of the contracting parties."

"Additional: The contract executed by this agreement remains subject to its other natural condition, among others, that of the provisions of surety and indemnification."

By their first and second assignments of error appellants assail the judgment of the court on the ground that the contract showed that garnishees had obligated themselves to pay Stallforth & Co. the sums of money therein specified in consideration of the acquiring by them of an interest in the land referred to, and were indebted to Stallforth in an amount in excess of the claim, and further, on the ground that the proof showed that Stallforth & Co. had advanced to appellees $15,000 on June 1, 1907, to be repaid on September 15, as shown by the witness Maury, in connection with the contract.

These assignments are based almost entirely upon certain testimony of Maury, one of appellants, as to conversations between himself and each of the appellees, wherein they are claimed to have made statements as to the nature of the contract between themselves and Stallforth & Co., to the effect, in substance, that appellees in consideration of being allowed to purchase a half interest in the land on the same terms as Stallforth was to purchase from Pereyra, was to pay the entire purchase money, including a cash payment of $30,000, Stallforth's one-half to be repaid to appellees when the land was sold; that when they met to close the trade appellees were not prepared to pay all of the $30,000, and thereupon Stallforth & Co. advanced to them $15,000 to enable them to make the cash payment, giving appellees an option until September 15, 1907, to purchase their half at $1 per acre, at which time, if appellees did not buy Stallforth & Co.'s one-half, they were to pay Stallforth & Co. the $15,000 so advanced by them to appellees.

Appellees denied having made the statements attributed to them by Maury, and Maury himself testified that he did not know that there was any substantial difference between what appellees told him about the contract, and the contract as it appeared to be set out in the written instrument; that there was no distinction in substance, but only in terms. At all events the court found upon all the evi-

dence, that the contract was as set out in the written instrument, discarding Maury's testimony in so far as it tended to show that it was otherwise.

We must then accept the court's findings based upon the terms of the written contract, and especially is this true in consideration of the fact that appellees denied the statements attributed to them by Maury as to the terms of the contract. Coming then to the findings of the court, based upon the written contract, the facts are clearly established that no reference is made to any advance or loan of the $15,000 by Stallforth & Co. to appellees or a repayment of that loan, but that as to the first payment of $30,000 each party paid one-half, appellees giving $15,000 to Stallforth & Co. and they paying it over to Pereyra with $15,000 on their own account. Appellees further obligated themselves to pay to Pereyra, not to Stallforth & Co., the other portions of the purchase money. It seems perfectly clear to us that this amount which appellees were to pay to Pereyra did not constitute such an indebtedness from appellees to Stallforth & Co. as would be subject to garnishment at the suit of appellants. Appellees' rights depended upon this money being paid to Pereyra, in whom was the title to the land, and they protected themselves by the provision in the contract obligating them to pay the money direct to Pereyra. It is true that they obligated themselves to Stallforth & Co. to pay this money to Pereyra, but that did not give Stallforth & Co. the right to demand that the money be paid to them, and certainly no creditor of Stallforth & Co. could require that any of this money be applied to the payment of Stallforth's debt to him, which, under the forfeiture provisions of the contract, would have resulted in an entire loss to appellees not only of their bargain, but of the $15,000 already paid.

As to the $15,000, it may be that the agreement originally was that appellees were to advance the entire $30,000 to make the first payment, and that finding themselves unable to do so, they only paid $15,000, but at this point the written contract comes in and settles the question as to the agreement between the parties. Nothing is said about a loan or advance by Stallforth & Co. to appellees, or any obligation on their part to pay the whole of the $30,000. It simply appears that each party pays one-half out of his own funds. As to the $15,000 the parties chose to put the matter in the shape of an obligation on the part of appellees to lend that amount to Stallforth & Co. to be repaid, with an interest, at six percent, along with Stallforth's half of the other payments to be made by appellees to Pereyra, when the land was sold. This is the effect of the written contract and by it must be determined the rights and obligations of the parties. It is not sufficient to change this obligation into one to pay $15,000 owing by appellees to Stallforth & Co. that the obligation is to lend Stallforth & Co. "the $15,000 which under this date they pay to Abel Pereyra." It was nevertheless an obligation to lend money at a prescribed rate of interest and upon prescribed terms of payment, with the correlative rights and obligations arising from such a contract, and not an obligation to pay that much money owing by appellees to Stallforth & Co., upon which a right of recovery, as for a

debt, could be based. If appellees had failed or refused to lend the money, the contingency having arisen upon which they agreed to do so, they would have been liable to Stallforth & Co. at most, not for a debt due, but for damages for breach of a contract, the amount of such damages being the actual loss sustained by them by reason of such breach, as a proximate consequence thereof. Again, there was no obligation on the part of Stallforth & Co. to borrow or to accept the loan at the stipulated rate of interest, and they might have declined to do so without violation of any provision of the contract. From this it follows that a judgment in the garnishment proceedings for the amount claimed by appellants, would not have afforded appellees any protection whatever against a forfeiture of their rights under the contract. The court's findings of fact are in effect but, its construction of the written contract and it did not err in holding that appellees were not indebted to Stallforth & Co. in any amount, which could be reached by garnishment. The first, second and third assignments of error and the various propositions thereunder are overruled.

It was made to appear that appellees decided not to accept Stallforth & Co.'s offer to sell their one-half of the land, but to lend them $15,000, procured a draft on New York for that amount payable to R. McDonald, which draft appellee R. McDonald had in his possession from August 31 to September 13, 1907, at which date it was endorsed and delivered to Stallforth & Co. in compliance with appellees' contract to lend them that amount. It is contended by appellants that this constituted "effects of Stallforth & Co. in the hands of the garnishees belonging to Stallforth & Co." and subject to the writ of garnishment. There is no merit in the contention. The fourth assignment of error presenting the point is overruled.

What we have said sufficiently disposes of the fifth, sixth and seventh assignments of error and the propositions thereunder, which are overruled.

The court heard evidence as to the value of the services of an attorney in filing the answers of appellees, and in representing them in resisting the garnishment proceedings, and allowed them $750 as such attorney's fees. This action of the court is complained of by the seventh and eighth assignments of error, the first denying appellees' right to recover attorney's fees, and the second attacking the allowance therefor as excessive.

The statute (art. 253, Rev. Stats.), provides that "Where the garnishee is discharged, the costs of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff." It is well settled that "reasonable compensation" so provided for includes reasonable attorney's fees. (Johnson v. Blanks, 68 Texas, 496.) Compensation is not to be limited, we think, to the value of the naked service of preparing the garnishee's answer, where the same is controverted, but must also include the value of legal services in resisting the writ, where it appears that the plaintiff has no cause of action against the garnishee. As said by the Supreme Court in the case cited: "That reasonable attorney's fees is a necessary expense in every case, we have no doubt. A person unskilled

in the law is not to be expected to prepare a written answer under our statutes which would secure him from liability, although he owed nothing to the defendant in the original proceeding. Besides, many cases arise in which his liability is doubtful, and the advice and assistance of counsel are necessary to shield him from the danger of his having to pay 'his debt twice. Whatever else it may include, we are clearly of the opinion that the statute was intended to cover a reasonable fee to the garnishee for the services of an attorney in assisting him in the proceeding."

The cases cited by appellants in support of their contention are not in point. Appellees never at any stage of the proceeding became active litigants on their own account any further than the mere denial of indebtedness constituted them such, but confined themselves solely to resistance of appellants' claim that they were indebted to Stallforth & Co., or had effects of theirs in their hands. They sought only to prevent a judgment, which they insisted and the court found would not have protected their interest in the matter of the contract referred to. In Kelly v. Gibbs, 84 Texas, 146, the answer of the garnishee was controverted and upon a trial of the issues thus formed he was unsuccessful. Upon this ground it was held that he was not entitled to recover costs. Moursund v. Priess, 84 Texas, 558, is to the same effect. In Carlisle v. Sommer, 61 Texas, 124, the answer of the garnishee was contested, and upon a trial of the issues the garnishee was successful. The court says that the trial court erred in rendering, at the time and under the circumstances that it did, a judgment against appellant for attorney's fees. We confess to an inability to understand fully what is here meant. If it supports appellants' contention it is inconsistent with the later cases of Johnson & Co. v. Blanks, *supra;* Willis v. Heath, 75 Texas, 124, and other cases. (Eastham Bros. v. Blanchette, 42 Texas Civ. App., 205.)

The court heard testimony as to what would be a reasonable attorney's fee and the amount awarded is fully sustained by this evidence under which we do not feel authorized to revise the judgment in this particular. In numbers of witnesses examined, all lawyers, the evidence rather preponderates in favor of $1000 as a reasonable fee.

Maury testified as to certain statements made to him by appellees (which were denied by them) and also as to statement made to him by Ivonski, Stallforth's agent, having relation to the transaction between appellees and Stallforth & Co., and as to the contract between them growing thereout. Appellants requested the court to make specific findings (1), whether such statements were made, and (2) if so, whether the contract was as indicated by such statements or in the purported written contract. The court declined to do so, and appellants excepted and complain of the ruling by their ninth and tenth assignments of error.

There was no error in the refusal of the court to make the findings requested. The matter constituted merely evidence introduced by appellants to show the nature of the contract. The finding of the court as to the terms of this contract, based upon the written contract, was all that was required. By such findings the court fully and clearly indicated its conclusion that the written instrument stated the con-

tract between the parties upon which the issues were to be determined. Where the evidence is conflicting the court is only required to find such facts as are deduced from such evidence. If such conclusions are not acquiesced in they may in a proper case be revised from the statement of facts. Appellees testified that the written instrument represented the contract between the parties and denied the statements attributed to them by Maury, and the court found in effect that this was true. This was all that was required.

What we have said sufficiently disposes also of the eleventh, twelfth, thirteenth and fourteenth assignments of error complaining of the failure and refusal of the trial court to make additional specific findings of fact. The assignments and the several propositions thereunder are overruled.

We find no error in the record and the judgment is therefore affirmed.

*Affirmed.*